Argued April 20, affirmed July 5, 1978

In the Matter of Rough, Georgina Marie,
a minor child,
STATE ex rel JUVENILE DEPARTMENT OF
MULTNOMAH COUNTY, *Respondent,*
*v.*
HAYWORTH, *Appellant.*
(No. 25,746A, CA 9463)
581 P2d 100

Timothy J. Vanagas, Portland, argued the cause for appellant. With him on the briefs was Solomon, Warren, Killeen & Kirkman, Portland.

Melinda L. Bruce, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

This appeal is from an order terminating appellant's rights as a parent with respect to her daughter, now eleven years of age. The gist of the petition underlying the court's determination is that the mother suffers from a mental deficiency, as a result of which she is unable to adjust to conditions so as to make the return of her child possible.

On this appeal, the mother raises five assignments of error, each of which will be discussed below.

First, she contends that the court erred in denying her motion to strike subparagraph B(1) of the petition, because the allegation that she suffers from a mental deficiency does not also allege that the deficiency is "of such duration as to render it impossible to care for the child for extended periods of time," in the language of ORS 419.523(2)(a). She contends the omission is fatally defective.

Assuming, arguendo, that a petition may be subject to a motion to strike, the argument overlooks the clear language of the preceding paragraph, ORS 419.523(2):

> "The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable in the forseeable [sic] future due to conduct or conditions not likely to change. In determining such conduct and conditions, the court shall consider *but is not limited* to the following:
>
> "* * * * *." (Emphasis added.)

The petition did allege the ultimate fact that the mother is "unfit by reason of conduct and condition seriously detrimental to the child and integration of the child into the home of the mother is improbable in the foreseeable future due to conduct and conditions not likely to change." The first condition stated is the mother's mental deficiency.

■ The allegation is sufficiently clear and definite that a person of average intelligence would know what is intended. In a proceeding such as this, that is all that is necessary. *State ex rel Juv. Dept. v. Goebel,* 26 Or App 251, 254, 552 P2d 281 (1976). No purpose is served by requiring slavish repetition of the statutory language in the petition.

■ The mother's second assignment is that the court erred in receiving into evidence the medical records of Fairview Hospital Treatment Center, pertaining to her. When the state sought to introduce the medical records, the mother's counsel objected on the grounds that ORS 179.505(1) and (5)[1] stand for the proposition that "the written account of any persons who are kept in a mental health facility in Oregon can't be used to substantiate commitment, criminal proceeding or other legal proceedings." The court, however, relying upon ORS 179.505(2),[2] ruled that if the mother were called to the stand and compelled to testify as to her previous commitments, the records would be admissible. Accordingly, that procedure was followed. From the record it is apparent that none of the participants

---

[1]Before amendment ORS 179.505(1) provided:

"Except as provided in subsections (2), (3) and (4) of this section, case histories, clinical records, treatment charts, progress reports and other similar written accounts of the patients of any Mental Health Division facility or community mental health program made and maintained in such facility or program by the officers or employes thereof who are authorized to make and maintain such histories, records, reports, charts and other accounts within the official scope of their duties shall not be subject to inspection."

Subsection (5) provided:

"No written account referred to in subsection (1) of this section may be used to initiate or substantiate any criminal, civil, administrative, legislative or other proceedings conducted by federal, state or local authorities against a patient or to conduct any investigations of a patient."

[2]Before amendment ORS 179.505(2) provided:

"If the patient, or in the case of his incompetence, his legal guardian, gives written consent, or if the patient, as a party to an action, suit or other judicial proceeding, testifies regarding an issue to which the written account would be relevant, the content of any written account referred to in subsection (1) of this section may be released."

in the hearing was aware of the recent amendments to ORS 179.505.[3] The mother now argues that under amended ORS 179.505(9)[4] her compelled testimony was insufficient to warrant the introduction of the records. We agree, but no prejudice results from the introduction of the records because our review is *de novo* on the record, and we will ignore the hospital records.[5] *Cf. State ex rel Juv. Dept. v. Robinson,* 31 Or App 1097, 1100, 572 P2d 336 (1977), *rev den* 281 Or 531 (1978).

The mother contends in her third assignment of error that the court unfairly prejudged her case. After five of the state's eight witnesses had testified, including the mother as an adverse witness as noted above, and before she presented her case, the court remarked to her counsel:

"If you really think that she is the kind of person with whom her daughter can have a minimally productive relationship, then we should get the full record; but my impression from the outset is that Mrs. Hayworth is non-functional, that the notion that there is a productive relationship which will be measurably more beneficial than any other relationship, no more than I know in the last hour, that notion is untenable.

"If you think you really want to protect and entertain the notion that this is possible, go ahead, and I will not

[3] ORS 179.505 was substantially amended, Oregon Laws 1977, ch 812, § 3. The amendments became effective October 4, 1977; the hearing was conducted October 15, 1977.

[4] ORS 179.505(9) as amended now reads:

"No written account referred to in subsection (2) of this section may be used to initiate or substantiate any criminal, civil, administrative, legislative or other proceedings conducted by federal, state or local authorities against the patient or to conduct any investigations of the patient. If the patient, as a party to an action, suit or other judicial proceeding, voluntarily produces evidence regarding an issue to which a written account referred to in subsection (2) of this section would be relevant, the contents of that written account may be released for use in the proceeding."

[5] At the hearing, neither counsel relied upon the records in any way. The court did not refer to the records other than with reference to the legal arguments as to their admissibility. Furthermore, the court issued its opinion from the bench, and it is apparent that the records did not influence the opinion.

[ 165 ]

criticize you for it; but if you think your duty is to continue to perform your legal function even though you recognize that there is no identifiable, significant relationship that is preservable because that is your professional duty, I would want to relieve you of it because it would appear now that there is no such minimally valuable relationship that she has with [the child] that ought to be preserved."

As we have noted in another context, "the questioned comment of the judge indicates only a fair appraisal of the evidence, *after he has heard it.*" *State v. Irby,* 24 Or App 465, 469, 545 P2d 1399 (1976). (Emphasis in original.) A judge formulates opinions as to the strength of a case as he hears the witnesses and views the evidence, and the fact that he informs counsel of the status of his opinion at a given stage of the proceedings does not indicate prejudgment. Here, the court was very careful not to cut off the presentation of the mother's case, and in fact she did present her own testimony and the testimony of her current spouse in her own behalf. We are convinced that the court gave careful consideration to the testimony presented by each party, and that his comments did not constitute error. In any event, we review *de novo* on the record, and there is no contention that the mother was prevented from making her record.

Fourthly, the mother contends that the court erred in requiring that she testify, apparently on Fifth Amendment grounds. While noting that the Fifth Amendment to the United States Constitution does not preclude the requirement that a parent testify in termination proceedings, *State ex rel Juv. Dept. v. Wade,* 19 Or App 314, 527 P2d 753 (1974), *rev den, appeal dismissed* 423 US 806 (1975), *overruled on other grounds* 24 Or App 601, 609, 547 P2d 175, *rev den* (1976), appellant argues

"* * * one of the grounds for termination was the Mother's alleged neglect of her daughter. ORS 419.523.

"Conduct which constitutes neglect under ORS 419.523 may also constitute a Class A Misdemeanor

under ORS 163.545. Therefore, the answers sought by the State in examining Dorothy Hayworth might tend to incriminate her on a criminal charge, in which case it was improper to require her to be a witness against herself."

The record indicates, however, that the sole purpose in calling the mother to the stand was to inquire as to her previous commitment to the state hospital. No evidence relevant to the issue of neglect was sought or adduced, and her testimony is not relevant to any possible criminal prosecution for neglect.

■ The mother's final assignment of error is that the court erred in finding that the preponderance of the evidence supported a termination order. On *de novo* review, if we find a preponderance of evidence supports one of the allegations, we must affirm.

The record indicates that the mother is seriously impaired. Although with some support she can function in society at a minimal level, many of the activities one might take for granted are beyond her capabilities. She does not relate to time at all. She does not know how old her daughter is, the time of day, or the year. Geography presents an equal problem for her, as she knows that her daughter was born in Nebraska, but not which city. At the hearing she could not indicate the state in which Portland is located, or the names of the adjacent rivers. The mother cannot operate a telephone, read or write (although the record indicates that with some help she can write her name). Additionally, she is unable to deal with money, having no conception of values. The record further indicates that at times she has confused her daughter who is the subject of this proceeding with some of her other children who have been removed from her custody. The mother was released on an administrative discharge from Fairview Treatment Center in 1963, but is still technically a patient; she has an I.Q. estimated to be approximately 49.

We have no doubt that the love and concern the mother has for her child is as complete as her capabilities will allow. And while we accept her husband's testimony at trial that having the daughter home is a stabilizing influence on the mother, our concern in this proceeding is for the best interests of the child. *State v. Blum,* 1 Or App 409, 463 P2d 367 (1970). On that issue, Dr. Sardo, clinical psychologist testified at the hearing:

"* * * [The child], who is already somewhat over-controlled would probably become the protector of the mother. In fact, she would become a ten-year old mother herself; and, therefore, she would be cheated out of her childhood, and she hasn't had much childhood already. Much of it has already gone down the drain anyway."

Affirmed.