ADOPTION OF SALVATORE.[1] No. 02-P-1291. April 18, 2003. *Adoption,* Dispensing with parent's consent. *Parent and Child,* Dispensing with parent's consent to adoption. *Due Process of Law,* Child custody proceeding.

After numerous hearings, a judge of the Juvenile Court determined that each of Salvatore's parents was unfit to care for Salvatore, that he was in need of care and protection, and that his best interests would be served by issuing decrees dispensing with the need for parental consent to adoption. Each parent appeals. Except for three findings,[2] the mother does not challenge the subsidiary findings, but rather claims that the findings, taken as a whole, do not amount to clear and convincing evidence of her current unfitness. The father's primary focus is that the Department of Social Services (DSS), by calling the parents to testify, each of whom have mental disabilities, violated their due process rights and shifted the burden of proof to the parents. He also asserts in a single paragraph, without discussion, that the findings do not show his unfitness.[3] We affirm.

1. *Parental fitness.* The mother lays stress on the fact that she manages to take care of another child, a daughter, and points to the opinion of her pediatrician, who thought highly of her care for her daughter. While it is true that the mother takes care of the other child, the record indicates that it is with the aid of considerable services provided by DSS and others. That a parent may be fit to raise one child does not mean she is fit to raise others. *Adoption of Kimberly,* 414 Mass. 526, 530 n.8 (1993). As to Salvatore, the judge was warranted on the record in concluding that DSS has met its burden of demonstrating parental unfitness of each parent by clear and convincing evidence. Indeed, the mother at various times indicated that she could not manage both children and agreed, or even suggested, that visits with Salvatore be curtailed. She also told her social worker that she was in favor of adoption, although she later changed her mind.

Without setting forth in full the judge's extensive findings that support her conclusion that the parents are unable to provide adequate care for Salvatore, we refer only to a few. Both parents suffer from mental disorders that impinge upon their fitness as parents,[4] have failed to engage successfully in visits with Salvatore, have failed to complete service plans, and have failed to participate sufficiently in the services offered by DSS with regard to Salvatore. Because of her lack of participation, the mother was terminated from programs provid-

---

[1] A pseudonym.

[2] An examination of the evidence supports these three disputed findings, and thus, they are not clearly erroneous.

[3] The father's single paragraph does not meet the requirements of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[4] Mental disorders in and of themselves are not evidence of unfitness. It is only when the disorder interferes, as here, with the ability to parent that it becomes relevant. *Custody of a Minor (No. 2),* 378 Mass. 712, 722 (1979). See *Adoption of Gregory,* 434 Mass. 117, 127 n.5 (2001).

ing parent aides, visiting nurses, early intervention, and individual therapy, as well as from Project Good Start. Despite evidence of domestic abuse and violence on the part of the father — he admitted kicking the mother — the mother continues her relationship with him. She lives with her mother (that is, the child's grandmother). Her brother and his child, and sometimes her uncle, also live there. The uncle has a reported history of sexual abuse involving children, the brother has an open case with DSS involving a cut of his child's penis requiring seven stitches, and the mother claims that the child's grandmother takes all of the mother's disability checks and gives her food to her uncle. In addition to the findings concerning the parents' unfitness, the judge found Salvatore's preadoptive parents to be suitable and the adoption plan in the best interests of Salvatore.

2. *Testimony of the parents.* The father's main contention is that DSS improperly called him and the mother as witnesses, thereby shifting the burden of proof and denying him due process. Not only did he not object when counsel for DSS indicated he intended to call them — nor did he object when the parents were in fact called to the stand at trial — but his counsel, when asked whether he had any witnesses, answered, "Just my client, your Honor."

Prescinding from the question whether the father has waived the issue, we conclude that the calling of the parents to testify was entirely proper. Contrary to the father's contention, nothing in G. L. c. 233, § 22,[5] precludes DSS from calling the parents as witnesses. See *Horneman* v. *Brown*, 286 Mass. 65, 69 (1934) (parties to civil actions may be called as witnesses by the opposite party). Just as the "unique characteristics of child custody proceedings do not require alteration or modification of the rule permitting inferences from a party's failure to testify in a civil case," *Custody of Two Minors*, 396 Mass. 610, 616 (1986), see *Care & Protection of Quinn*, 54 Mass. App. Ct. 117, 120 (2002), those characteristics do not require alteration or modification of the rule permitting the calling of a parent as an adverse party. To the contrary, where a parent's fitness is at stake, absent a privilege, there is no reason why the finder of fact should be deprived of the testimony of the person whose behavior is most relevant to the proceeding.

Where the parent's privilege under the Fifth Amendment to the United States Constitution is not involved, cases elsewhere hold that there is no bar to requiring a parent to testify in a child custody termination proceeding. See *In re Davis*, 116 N.C. App. 409, 412 (1994); *State ex rel Juvenile Dept.* v. *Hayworth*, 35 Or. App. 161, 166-167 (1978); *In Interest of P.L.L.*, 597 P.2d 886, 889 (Utah 1979). Compare *In re Billman*, 92 Ohio App. 3d 279, 280-281 (1993) (broadly stating that mother's testimony on matters encompassed by the statutory definition of "dependent child" "would open the door for potential prosecution, for child endangering"), with *In re Gladys H.*, 235 A.D.2d 841, 843 (N.Y. 1997) ("not improper . . . to compel respondent to decide whether to testify and face the possibility that his testimony may be used in a criminal proceeding or to remain silent and face the risk of losing the care and custody of his daughters. This . . . does not deprive respondent of due process as he has not been prevented from offering evidence or cross-examining witnesses"). Compare *In re Huff*, 140 N.C. App. 288, 294-299

---

[5]The statute provides in relevant part: "A party who calls the adverse party as a witness shall be allowed to cross-examine him."

(2000) (despite claim under First Amendment to the United States Constitution, court held it permissible to question father concerning ways parental religious beliefs [casting spells] might affect their behavior toward child).

We concur with the view that, absent a valid assertion of privilege — the father makes no such claim — a parent may be required to testify.

*Decree affirmed.*

*Robert J. McCarthy, Jr.,* for the father.

*George M. Earley* for the mother.

*Maria Makredes,* Assistant Attorney General, for Department of Social Services.

*Brigid Kennedy-Pfister* for the child.