The mother appeals from a decision by a judge of the Juvenile Court awarding guardianship of the child to the father's former girl friend (guardian). The mother asserts that the judge's findings do not support a determination, by clear and convincing evidence, of her unfitness and, further, that the judge erroneously declined to award the mother visitation, leaving that to the discretion of the guardian. We affirm.
1. Sufficiency of the evidence. The parties agree that when the judge made her initial findings, she indicated that these were "summary in nature" and that she would expand them if an appeal was taken; however, neither party filed a motion for additional findings. Accordingly, the dispute centers around whether the judge's summary findings are nevertheless sufficient to support the judge's determination that the mother is currently unfit and that an order of visitation would not further the child's best interests. The mother asserts they are not. She contends the judge applied the wrong evidentiary standard, relied on stale evidence, and failed to analyze how the mother could meet the child's needs. We disagree.
At the outset, we are not persuaded that the judge's failure to delineate the applicable evidentiary standard in her findings undermines them. We presume that she applied the correct legal standard. Cf. Manfrates v. Lawrence Plaza Ltd. Partnership, 41 Mass. App. Ct. 409, 412 (1996) (when single justice does not state standard of review, court presumes he used correct one), and cases collected. Therefore, we turn our discussion to that standard.
One petitioning for guardianship of a child must prove the legal parent of the child is currently unfit by clear and convincing evidence. R.D. v. A.H., 454 Mass. 706, 712 (2009). The judge, in determining unfitness, must "enter specific and detailed findings demonstrating that close attention has been given the evidence." Custody of Eleanor, 414 Mass. 795, 801 (1993) (quotation omitted). These findings are owed deference when, as is the case here, the judge observed the witnesses testify and thereafter made determinations of credibility and fact which find support in the record. Id. at 800. Our review is for clear error or an abuse of discretion, accepting all facts found by the judge unless they are clearly erroneous. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 799 ; Care & Protection of Yetta, 84 Mass. App. Ct. 691, 696 (2014).
Here, the judge found that the child suffered extreme trauma and abuse in the mother's home, mostly at the hands of the mother's boy friend. The child "had no stability in her life, and lived in extreme fear." This finding is supported by the child's uncontroverted testimony, which the judge credited, regarding the horrific instances of abuse the child suffered while in the mother's care.[3] The mother also admitted to the abuse and to leaving the child alone with this man even after the child reported the abuse. The mother asserts this occurred years earlier and has no bearing on her current fitness. We are not persuaded.
Contrary to the mother's assertions, the judge did not improperly rely on stale evidence. See Adoption of Carla, 416 Mass. 510, 517 (1993). "[P]rior history does have prognostic value." Ibid. Evidence of past parental behavior is particularly compelling when it supports a continuing pattern of neglect. See Adoption of Larry, 434 Mass. 456, 469 (2001).
Concerning here is the mother's continuing pattern of putting her needs before the child's. See Adoption of Arthur, 34 Mass. App. Ct. 914, 915 (1993). The judge found that, despite the child's traumatic history and fear of the mother, the mother "states that [the child's] wishes are not important, and that her role as parent commands the return of her daughter to her." See ibid.
While the judge's findings are sparse, the judge found the child's testimony, which included testimony that the mother does not listen to the child, puts her own concerns before the child's, and makes the child uncomfortable, "compelling." For example, the judge found that the mother insists that the child engage in therapy with the mother because she "made some strides with therapy herself," and that such insistence disregards the child's need for "self-preservation." The judge noted that, contrary to the mother's claims, the child's refusal to attend therapy is not borne from "adolescent stubbornness" or the guardian's interference but rather is a "direct result of the fear and trauma she suffered in her mother's care."
To this end, the judge properly considered the child's "particular needs and circumstances," and "the effect on [the] child of being placed in the custody of [the mother]." Considering that "the child has suffered trauma and fear while in the custody of her parent, has attained a mature age, and has unequivocally nominated a person other than her parent to be her guardian," the judge determined that "placing [the child] in [the m]other's care would be detrimental to her welfare." In such circumstances, the judge gave due weight to the child's wishes, Adoption of Nancy, 443 Mass. 512, 518 (2005), and properly factored in the fact that the mother's parenting skills, even with respect to her other children, remain under investigation in an open protective service case in the mother's home State of South Carolina. Cf. Adoption of Salvatore, 57 Mass. App. Ct. 929, 930 (2003). We perceive no error.
2. Visitation. The mother contends that the judge abused her discretion in declining to enter an order of visitation after granting the guardianship. We disagree. Ordering visitation is within the discretion of the trial judge. Adoption of Ilona, 459 Mass. 53, 66 (2011). A visitation order is appropriate only when it is in the best interests of the child, and a judicial order, rather than merely relying on the discretion of the child's new guardian, is necessary to protect those interests. Id. at 63. Here, the judge did not abuse her discretion in leaving the visitation decision to the guardian. The child was adamant that she did not want to engage with the mother-a position the judge found to be borne of "self-preservation." Should time heal these deep wounds, the guardian, who the judge by her decision implicitly found has the child's best interests at heart, has the authority to decide if visitation is in the best interests of the child. Id. at 63-64. See G. L. c. 190B, § 5-209(a ), inserted by St. 2008, c. 521, § 9 ("A guardian of a ward has the powers and responsibilities of a parent regarding the ward's support, care, education, health and welfare. A guardian shall act at all times in the ward's best interest and exercise reasonable care, diligence and prudence"). We see no abuse of the judge's wide discretion. Adoption of Ilona, supra at 63.
Judgment affirmed.

There was undisputed testimony that when the child was five, one of the mother's boy friends held the child at gunpoint. He laid her on the side of the bed, facing the wall with a sock in her mouth, and hit her every time she moved. The child reported the incident to the mother, and the mother left the child alone with the same man the next day; in retaliation for her telling the mother, he proceeded to hit the child repeatedly until his own mother intervened. See Care & Protection of Lilith, 61 Mass. App. Ct. 132, 140 (2004) (appellate court may look to undisputed evidence of domestic violence when assessing judge's determination of parental fitness).